IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

KATHY MAE HUDSON, )
)
    Plaintiff, )
)
v. ) Case No. CIV-10-416-SPS
)
MICHAEL J. ASTRUE, )
Commissioner of the Social )
Security Administration, )
)
    Defendant. )

## OPINION AND ORDER

    The claimant Kathy Mae Hudson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

    Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born July 2, 1963, and was forty-five years old at the time of the administrative hearing.  (Tr. 107).  She completed eighth or ninth grade, and has no work that qualified as past relevant work.  (Tr. 39, 125).  The claimant alleged that she has been unable to work since August 1, 2000, due to bi-polar disorder, panic attacks, anxiety, and a chemical imbalance.  (Tr. 120).

## Procedural History

On August 26, 2003, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  Her application was denied.  ALJ Tela L. Gatewood conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 24, 2010. (Tr. 16-30).  The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation.  She found that the claimant had the residual functional capacity (RFC) to perform a full range of light work, 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she could perform only simple two and three-step tasks and could not work with the public or in environments with concentrated exposure to dust, chemicals, fumes, or smoke.(Tr. 24).  The ALJ concluded that although the claimant could not return to her past relevant work, she was

nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, merchandise marker, laundry folder, and shirt folder machine operator.  (Tr. 29).

### Review

The claimant contends that the ALJ erred by failing to properly evaluate the medical evidence from her treating physician, Dr. Thomas Trow, as well as her counselor, Ms. Sharon Teafatiller.  The Court finds the ALJ *did* fail to properly consider the opinions of Dr. Trow and Ms. Teafatiller, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant had the severe impairments of chronic obstructive pulmonary disease, gastroesophageal reflux disease, obesity with lower extremity edema, a major depressive disorder recurrent with psychotic features, bipolar disorder 1, generalized anxiety disorder, post-traumatic stress disorder, hypertension, and a history of polysubstance abuse (mostly alcohol and marijuana).  (Tr. 19).  On August 15, 2005, the claimant was admitted to the emergency room with complaints of chest pain that were eventually attributed to her COPD and a gallstone.  (Tr. 229, 237).  An echocardiogram revealed mild mitral regurgitation that was probably physiologic and a normally contractile left ventricle.  (Tr. 212).  A September 7 sleep study revealed the claimant had insignificant sleep-disordered breathing, no periodic leg movements, and sleep architecture fragmentation and oxygen desaturation that was possibly related to her COPD.  (Tr. 197).  The claimant underwent an esophagogastroduodenoscopy on June 30, 2006, which revealed a medium-sized hiatus hernia but was otherwise normal.  (Tr. 187).

On September 28, 2007, the claimant underwent a consultative physical examination by Dr. Ronald Schatzman.  He found the claimant had normal range of motion and reflexes. (Tr. 274-280).  Dr. Thomas Trow also treated the claimant for her medical impairments.  On November 18, 2008, he saw the claimant for complaints of frequent falls and prescription refills.  (Tr. 450).  In January 2009, he treated her for a cyst, but noted the claimant's continuing complaints of back pain and lack of sleep.  (Tr. 448).  In describing the claimant's history of illness, he writes, "Complex patient . . . having trouble getting back on SSI which is hard to understand given her HX of major affective disorder plus an array of physical complaints, including frequent bouts of spontaneous syncope, CH daily HA after concussion with LOC approx. 2 yrs ago, progressive LBP and limiting IQ strongly suspected."   (Tr. 472).   Additionally, Dr. Trow submitted a letter to the Commissioner, stating that his professional opinion was that the claimant was incapable of maintaining employment, suffered on a daily basis, and had a poor prognosis for recovery.  (Tr. 621).

  The claimant received treatment at Mental Health Services of Oklahoma in several locations, with treatment notes spanning from 2005 to 2007.  (Tr. 289-392).  Although a great deal of that record applies to the claimant's medical prescription management, it also contains the claimant's individual/group therapy notes and mental health diagnoses. On March 29, 2007, an evaluation notes that the claimant had a global assessment of functioning (GAF) of 60, that she was in poor health, and that her prognosis for recovery was fair.  (Tr. 335-338).  A February 17, 2009 letter to the claimant from her counselor, Sharon Teafatiller states that clinical records were unavailable because the agency used

Electronic Medical Record. (Tr. 430). In that same letter, Ms. Teafatiller noted that the claimant attended group counseling twice a month and individual counseling once a month, that the claimant saw the clinic physician for depression and anxiety medications, and that she was diagnosed with major depressive disorder severe and generalized anxiety disorder. (Tr. 430) Ms. Teafatiller also reviewed the claimant's impairments, and stated that the claimant had "been unable to seek and maintain employment for the past 12 years due to health problems and emotional instability," that her prognosis was "poor," and her barriers to recovery included "chronicity" and the level of severity of her impairments. (Tr. 430). On April 27, 2009, Ms. Teafatiller completed a Mental Impairment Questionnaire, assessing the claimant with a GAF of 38, and stating that her highest in the past year was 42. She checked boxes indicating that the claimant displayed more than fifteen signs and symptoms, plus nightmares and difficulty making decisions. (Tr. 455). In support, Ms. Teafatiller cited the claimant's often disheveled appearance, slow thought processes, coherent thoughts with simple statements, no delusions, "mild hallucinations (visual), poor insight, fair judgment, oriented x3, forgetful – can't get organized – ongoing suicide thoughts, denies intent." (Tr. 455). On September 21, 2009, Ms. Teafatiller completed an updated treatment plan for the claimant, noting that her current GAF was 37. (Tr. 611-619). She also noted that the claimant had made only minimal progress on previously-set goals. (Tr. 614). Ms. Teafatiller testified at the administrative hearing, stating that she had treated the claimant monthly for approximately four years, for her problems with sleeping, medically-controlled hallucinations, and persistent depression with frequent crying spells. (Tr. 48-49). She

described the claimant's speech as slow and her daily activities as abnormal because the claimant spends a lot of time sitting at her home and even keeps to herself when attending the Psych Social Rehab Program.  (Tr. 49-50).  Ms. Teafatiller described the claimant as "relatively stable," but stated that the claimant sometimes calls because she has decompensated in her depression and they have to "keep an eye on her" to prevent the recurrence of suicidal thoughts.  (Tr. 50).  Upon questioning, Ms. Teafatiller stated that although it would be good for the claimant to try to be around the public, she did not believe the claimant would be able to tolerate it.  (Tr. 51).

On September 27, 2007, Dr. Theresa Horton performed a consultative Mental Status Examination.  (Tr. 268-271).  Dr. Horton noted that the claimant's thought processes were "logical, organized and goal directed, but notably slow"; that the claimant had a significant history of suicidal ideation, as well as auditory/visual hallucinations; that her mood was predominantly depressed; and that the claimant possessed fair insight. (Tr. 270-271).  Dr. Horton then diagnosed the claimant with PTSD, chronic; bipolar disorder; history of polysubstance abuse, marijuana and alcohol, in remission 18 months (the claimant reported that she had not consumed alcohol in 18 months, or done drugs in six years); COPD; arthritis; and stomach problems, as well as problems with finances, access to healthcare, difficulty with transportation, and marital problems.  (Tr. 271).  Dr. Horton concluded that although the claimant appeared capable of understanding and managing simple but not complex instructions and tasks, the claimant "likely has significant problems adjusting into occupational and social settings as she appears quite

lethargic and short of breath, and she reports this is typical of her presentation."  (Tr. 271).

The claimant testified at the administrative hearing that her daughters and ex-husband help to support her.  (Tr. 40).  She stated that she does her own laundry, prepares simple meals, and grocery shops, but that she cannot stay in the store too long.  (Tr. 42).  She mentioned attending a "clubhouse" at her mental health facility which includes social chores and dinner, but that attending exhausted her.  (Tr. 43-44).  Additionally, she testified that she has back problems and breathing problems that require the use of a nebulizer and inhaler.  (Tr. 45).

Medical opinions from a treating physician are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record."  *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  When a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to which they are entitled by analyzing all of the factors set forth in 20 C.F.R. § 404.1527.  *See Langley v. Barnhart*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300.  The pertinent factors are:  (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

(iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-01 [quotations marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight," *id.* at 1300 [quotation omitted].

In her written opinion, the ALJ summarized the claimant's testimony and the medical evidence, giving little weight to Dr. Trow's opinion because she found that it was not supported by the evidence and appeared to be based on the claimant's self-reported symptoms. (Tr. 28). The ALJ did not first evaluate Dr. Trow's opinion for controlling weight, and even misconstrued Dr. Trow's statement that it was difficult to understand how the claimant was having difficulty regaining SSI benefits by interpreting it to mean that the claimant's attempt to get SSI benefits was difficult to understand. (Tr. 28). But even if the opinion expressed by Dr. Trow *was not* entitled to controlling weight, the ALJ should have determined the proper weight to give it by applying all of the factors in 20 C.F.R. § 404.1527. *See Langley*, 373 F.3d at 1119. *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("[An ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of

disability, including opinions from medical sources about issues reserved to the Commissioner."), *quoting* Soc. Sec. R. 96-5p, 1996 WL 374183 at *3 (1996). *But see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. Ms. Oldham cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion. . . . The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."). The ALJ failed to perform the proper analysis here.

As to Ms. Teafatiller's opinion, the ALJ found that her opinion "show[ed] an individual more limited than reported in more contemporary treatment notes," and concluded that the statements were "based on the claimant's statement of her symptoms and in support of her economic interests." (Tr. 27). Social security regulations provide for the proper consideration of "other source" opinions such as those provided by Ms. Atwood herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" and by considering 20 C.F.R. §§ 404.1527, 416.927 factors in determining the weight of these opinions), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *1; Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *6 (discussing considerations of evidence from sources who are not acceptable medical sources and stating that "[a]lthough there is a distinction between what an adjudicator

*must consider* and what the adjudicator *must explain* in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.") [emphasis added].  The relevant factors for evaluating opinion evidence from other sources are:  1) the length of the relationship and frequency of contact, 2) whether the opinion is consistent with other evidence, 3) the extent the source provides relevant supporting evidence, 4) how well the source's opinion is explained, 5) whether the claimant's impairment is related to a source's specialty or area of expertise, and 6) any other supporting or refuting factors.  *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d).  Although the ALJ mentioned SSR 06-03p, he did not discuss any of the factors for evaluating other source opinions much less connect them to any evidence.  It is therefore unclear whether he properly considered the applicable factors.  *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation.") [citations omitted].  *See also Bowman v. Astrue*, 511 F.3d 1270, 1274-75 (10th Cir. 2008) (discussing the application of SSR 06-03p and noting that "'[o]pinions from [other sources] . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.'"), *quoting* Soc. Sec. Rul., 06-03p, 2006 WL 2329939, at *3.  *Cf. Carpenter v. Astrue*, 537 F.3d 1264, 1267-68

(10th Cir. 2008) ("Although a chiropractor is not an 'acceptable medical source' for diagnosing an impairment under the regulations, the agency has made clear that the opinion of such an 'other source' is relevant to the questions of severity and functionality. The ALJ was not entitled to disregard the 'serious problems' set out in Dr. Ungerland's opinion simply because he is a chiropractor.").

Because the ALJ failed to properly consider both a treating source opinion *and* an "other source" opinion, the decision of the Commissioner should therefore be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 22nd day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma